OVERTON, J.
 

 This is an action to recover an undivided one-eighth interest in certain land, lying in Evangeline parish, and described as being all of section 28 and the NE% of section 32, township 1 south, range 1 east, containing 804.7 acres, and to recover for timber cut from the land.
 

 Plaintiffs and the defendant Michael K. Trainor, who is in an insane asylum, and is here represented by a curator ad hoc, are the legal heirs of John O. Tr.ainor, deceased. Defendants, omitting Michael K. Trainor, who is only, in form, a defendant, are the Crowell & Spencer Lumber Company, the Meridian Lumber Company, and John L. Lacroix.
 

 Plaintiffs claim through .the following chain of title: United States to John Moore; John Moore to heirs of William Prescott, by deed recorded in 1866; Aaron Prescott, who was one of the William Prescott heirs, to John O. Trainor, the last-named vendor, conveying his one-eighth undivided interest in the land, by deed recorded in 1873. ,
 

 The chain of title through which defendants claim is the same as plaintiffs’ chain until the conveyance by Aaron Prescott is reached, when, instead of that conveyance, the following appears: Heirs of William Prescott, among whom is the Aaron Prescott in plaintiffs’ chain, to Calcasieu Pine Company, by deed, recorded in 1906; Calcasieu Pine Company to Calcasieu Timber Company, by deed recorded in 1911; Calcasieu Timber Company to Crowell
 
 &
 
 Spencer Lumber Company, by deed, recorded in 1913; Crowell & Spencer Lumber Company to Meridian Lumber Company (land less timber) by deed, recorded in 1923.
 

 It is unnecessary to state Lacroix’s title, because not only did Lacroix make no appearance in the lower court, but took no appeal from the judgment rendered against him, and has made no appearance in this court. Hence, he has passed out of the case.
 

 Since the deed of the heirs of William Prescott to the Calcasieu Pine Company was recorded after the recordation of the deed of Aaron Prescott, one of those heirs, to John O. Trainor, it follows that the deed to Trainor conveys the superior title, and therefore the only defenses pressed by the Crowell & Spencer Lumber Company and the Meridian Lumber Company, in this court, are the prescription of ten years, acquirendi causa; pleas of estoppel and abandonment; and the prescription of one year, liberandi causa, filed against the claim of damages for timber cut.
 

 The prescription of ten years rests upon turpentine operations said to have been conducted; continuously in'1916, 1917, 1918, and
 
 *56
 
 by logging operations, conducted, it is said, from 1914 to 1919, inclusive.
 

 The Crowell & Spencer Lumber Company is the owner of a large tract of land, of which the land in contest forms a part. The tract, however, while forming one whole, was acquired by different deeds. Therefore, actual possession of a part of the tract is not deemed, in law, to be actual possession of the entire tract, but only of that part of it, included in the deed, under which the part possessed forms part, and which is contiguous to the part in contest. The application of this well-established principle eliminates the value of a large part of the possession, relied upon by the two lumber companies. The only parts, held under the same deed, which are contiguous to the parts in contest, are a 'part of section 29, and a part of section 33, which are contiguous to both sections 28 and 32, and a part of section 27, and the remainder of section 32, which are contiguous to that part of section 32, in contest, all of which lie east of the Rock Island Railroad.
 

 The turpentining, relied upon as an act of possession, was begun on the land acquired under the same deed as the land in contest, and contiguous to it, in 1917, more than ten years prior to the institution of this suit, and was continued through that year and through the year 1918. There was also turpentining done, during those years, on the land in litigation here. Following the turpentining, that is, after December 1, 1918, or January 1, 1919, which was less than ten years prior to the institution of this suit, the timber was cut and logged on a part of the land contiguous to the land in controversy, and held under the same deed. No timber at all was cut on the land in contest, save just across the line in the NE% of section 32.
 

 While the cutting and logging operations were in progress, as they neared the boundaries of the land, and, in fact, had encroached slightly beyond one of the boundaries of a part of it, Theophilus Messer, representing some of the alleged claimants of the property at the time, and who later became a claimant himself, and who thereafter transferred his rights to ¿acroix, one of the defendants in this case, visited the property, and protested against the cutting of the timber thereon, substantially upon the ground that the Crow-ell & Spencer Lumber Company was not the owner of the property in contest. This protest was heeded, and the timber on the NE% of section 32, with the exception noted, and in section 28, was not cut. Again, in 1925, an effort was made to cut and log the timber thereon, but Messer again protested, and this protest, after some discussion, was also heeded.
 

 When the first protest was made by Messer, the Crowell & Spencer Lumber Company had acquired, approximately two years before, the possession of the land in controversy, by peaceably taking actual possession of those parts of the entire tract held under the same deed as the land in dispute, for turpentine operations, and had extended these operations through the land in controversy. These operations were sufficiently extensive and patent to make it noticeable to any one passing by or through the tract that the contiguous land, as well as the land in contest, was possessed for turpentine purposes, and this condition remained, not merely temporarily, but for a substantial period, and traces of it could be seen even at the time of the trial.
 

 We think that the taking of possession for these operations was the taking of actual possession, and hence, when the foregoing protest was made, the-Crowell & Spencer Lumber Company had actual possession of the property.
 

 
 *58
 
 Plaintiffs, however, urge that, due to the protests made by Messer against the cutting and removal of the timber from the land in controversy following the turpentine operations, the possession flowing from those operations was not a peaceable possession, and therefore that it is not such a possession as will sustain the prescription of ten years. They cite, in support of this position, article 3487 of the Civil Code, which provides:
 

 “To enable one to plead the prescription treated of in this paragraph [the prescription of ten years], it is necessary that the possession be distinguished by the following incidents:
 

 “1. That the possessor shall have held the thing in fact and in right, as owner; when, however, it is only necessary to complete a possession already begun, the civil possession shall sufliee, provided it has been preceded by the corporal possession.
 

 “2. That the possession shall have been continuous and uninterrupted,
 
 peaceable,
 
 public and unequivocal; a clandestine possession would give no right to prescribe; but he who possesses by virtue of a title can not be considered as a clandestine possessor,, for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription.” (Italics ours.)
 

 A possession may be said to be not peaceable, within the meaning of the article, when held over protest. Marcadé, Explication du Code Napoleon, De La Prescription, p. 87; Troplong, Le Droit Civil Expliqué, No. 546, p. 79. However, mere protests do not interrupt prescription. Troplong, supra. The running of prescription may be interrupted in only two ways: First, by a natural interruption, which occurs where the possessor is deprived of the possession of the thing during more than a year, either by the ancient proprietor or by a third person; and, secondly, by a legal interruption, which occurs where the possessor has been cited before a court of justice, on account of either the ownership or the possession. Civ. Code, arts. 3516-3518.
 

 In this case, prescription was running, and had been running for about two years, when the first protest was made, and therefore, so far as concerns the protests, which were ineffectual to stop its running, the course of prescription continued to run.
 

 The effect of the protest, although heeded, was not to oust the Crowell & Spencer Lumber Company from a possession already acquired. “And actual possession, once begun, is continued by mere civil possession, so long as not ousted by a counter actual possession of one year.” Jones v. Goss, 115 La. 926, 40 So. 357. Moreover, the retention of the actual possession acquired is not inconsistent with refraining from cutting and removing the timber, by reason of the protest. It is perfectly consistent with an intention not to cut the timber until. the question of title should be settled, and at the same time to retain the possession acquired. That possession, which had begun, was retained by paying the taxes and looking after the property.
 

 It is also urged by plaintiffs that the prescription of ten years was interrupted by a suit instituted by Lacroix, who was the holder of Messer’s claim of title, against the Crowell & Spencer Lumber Company, prior to the lapse of ten years from the commencement of the turpentine operations. Be that as it may, the suit was, upon motion of Lacroix, through his counsel, dismissed. It is well established that the dismissal of a suit on the motion of the party bringing it, which is a voluntary dismissal, does not have the effect of inter
 
 *60
 
 rupting prescription. The situation thereafter remains the same as if the suit had never been -brought.
 

 The contention that because the title, under which the Crowell & Spencer Lumber Company holds, contains a limited warranty, prevents the prescription of ten years from running, is not well founded in law. The fact that a deed excludes all warranty, or is a mere quitclaim deed, does not prevent prescription from running. Land Development Co. of Louisiana v. Schulz, 169 La. 1, 124 So. 125; Read v. Hewitt, 120 La. 28S, 45 So. 143. In the very recent case of Perkins v. Wisner (La. Sup.) 132 So. 493,
 
 [1]
 
 on rehearing, this question was fully considered, and the foregoing conclusion reached.
 

 Our opinion is that a case has been made out, showing that the prescription of ten years should be sustained. The fact that, at the time the Crowell & Spencer Lumber Company purchased the property, that company was (considering the defect, arising aliunde, the deed, showing that plaintiffs’ interests had not been conveyed by valid title) a co-owner with plaintiffs of the property, does not prevent the prescription from running. The company had a deed to the whole property, which, upon its face, was translative of the property, in its entirety, including plaintiffs’ interest. One may prescribe beyond his lawful title. Civ. Code, art. 3515; Land Development Co. of Louisiana v. Schulz, supra. This is equally true as to the Meridian Lumber Company, which acquired its rights from the Crowell
 
 &
 
 Spencer Lumber Company.
 

 Judgment was rendered in the lower court in favor of plaintiffs for the land, and reserving their rights to sue for the timber. The judgment should be set aside.
 

 Eor these reasons, the judgment appealed from is set aside, the plea of ten years’ prescription is sustained, and plaintiffs’ demands are rejected ; plaintiffs to pay the costs in both courts.
 

 O’NIELL, C. J., is of the opinion that the judgment should be affirmed.
 

 [1]
 

 171 La. 898.