99 So.2d 58

John Albert BEL et al.

v.

Evence MANUEL et al.

No. 43214.

Jan. 6, 1958.

---

Liskow & Lewis, Richard E. Gerard, Lake Charles, for appellants and defendants in reconvention.

Bernard N. Marcantel, Jennings, for appellees and plaintiffs in reconvention.

McCALEB, Justice.

This suit, which began as an action of slander of title, was converted by defendants' pleadings into a petitory action. The title pleaded by defendants, hereafter referred to as the Bertrand heirs, is conceded by plaintiffs to be a valid paper title to the land in contest and the question for decision is whether plaintiffs have a superi-

or title which they claim to have acquired by the ten-year prescription under Articles 3478 and 3479 et seq. of the Civil Code.

The property involved is a 40-acre tract of open woodland, specifically the NW¼ of the SE¼ of Section 22, Township 6 S, Range 4 W, Allen Parish. Plaintiffs are the successors in title of J. A. Bel Lumber Company, Ltd., and defendants derive their title from their ancestor, Solomon Bertrand.

The facts reveal that, on December 31, 1890, a United States Patent was issued to Alfred Langley for certain lands in Section 22 of Township 6 S., Range 4 W., Louisiana Meridian, which included the W½ of the SE¼ of the Section. On April 23, 1891, Langley sold the latter to Solomon Bertrand.

On March 11, 1895, Solomon Bertrand sold to Joachim Fontenot the SW¼ of the SE¼ of Section 22, T. 6 S, R. 4 W, and on February 7, 1896, he reconveyed the same 40 acres to his vendor, Alfred Langley.

The title under which plaintiffs originally claimed to have derived ownership by pre-scription in their plea filed in the district court[1] and upon which the possession of their predecessor, Bel Lumber Company, was allegedly founded, emanated from certain children of Joachim Fontenot, who had no title to the NW¼ of the SE¼, their interests being confined to the SW¼ of the SE¼. By warranty deed executed on December 2, 1913, Mrs. Ophelia Manuel and Mrs. Eva Miller, both born Fontenot, sold to J. A. Bel Lumber Company, Ltd. "All of our individed interest" in and to the W½ of the SE¼ of Section 22, T. 6, R. 4 W, it being provided that "The interest hereby conveyed being the interest inherited by us from our deceased mother, Olive Ortego, wife of Joachim Fontenot, now both deceased".

Following a trial of the case at which evidence was adduced respecting the nature of the possession exercised by Bel Lumber Company,[2] the defendants sought to have the case reopened for the purpose of introducing in evidence two certain deeds which, they contend, establish that the Bel Lumber Company was in legal bad faith. The deeds were admitted by consent of both parties. They are—

1. Plaintiffs' plea of prescription also included the 30-year acquisitive prescription provided by Article 3499 et seq., of the Civil Code. This prescription was rejected by the trial court and has since been abandoned by plaintiffs.

2. The possession of Bel Lumber Company, Ltd. was found by the district judge to consist mainly of the cutting of timber. In 1914 or 1915 all virgin pine timber was cut from the land and, in 1945, there was a cutting of additional timber. In 1943, some blaze marks were found on the east and west lines of the disputed tract. Other than this, and the payment of taxes, no other acts of possession were exercised by either the lumber company or the Bel heirs, who succeeded it.

(1) A conveyance dated March 18, 1910 to J. A. Bel Lumber Co. Ltd. from John R. Liles of his undivided one-half interest in and to considerable land including 11/14ths interest in the NW¼ of the SE¼ of Section 22, T. 6, R. 4 W, it being provided "The intent of this instrument being to convey to the said J. A. Bel Lumber Co. Ltd. all of Vendor's interest in and to all lands owned by him in conjunction with said corporation in Township Six South, Range Four West, La. Mer."

(2) A warranty deed dated January 27, 1917, to J. A. Bel Lumber Co., Ltd., from Mrs. Alidia Manuel, born Fontenot, of "All of my undivided interest inherited from my mother, Olier Fontenot, being ¼4th, more or less, in and to the * * * W½ of SE¼ Section 22, T. 6, R. 4 W" and further providing "It is the intention to convey by this act all of my interest in and to the above described land."

Upon final submission of the case, the judge gave consideration to all titles of the Bel heirs in determining their plea of the ten-year acquisitive prescription and, in a well-reasoned opinion, he rejected their claims, holding that the Bel Lumber Company was in legal bad faith under each of the deeds. Judgment was accordingly rendered in favor of defendants, recognizing them to be the owners of the land in contest. Plaintiffs have appealed.

As heretofore stated, plaintiffs' plea of the ten-year prescription, which was filed in the district court after the hearing, was founded solely on the 1913 deed to Bel Lumber Company from Ophelia Fontenot Manuel and Eva Fontenot Miller. However, following the reopening of the case at defendants' behest to permit the introduction of the 1910 and 1917 deeds, plaintiffs, apparently forced by the circumstances to somewhat alter their position, then insisted that all the deeds sustained their alleged prescriptive ownership. In disposing of the plea of prescription, the judge, as aforesaid, considered the 1910 and 1917 deeds as well as the 1913 deed, and plaintiffs have filed an omnibus prescriptive plea in this Court which would necessarily include those deeds, which is permissible under Articles 3464 and 3465 of the Civil Code. See Whittington v. Heirs of Pegues, 165 La. 151, 115 So. 441.

Since the alleged corporeal possession of Bel Lumber Company, i. e., the timber cutting in 1914 or 1915, was begun under and was undoubtedly founded on the 1913 deed, we address our immediate attention to it as the prime basis of plaintiffs' prescriptive title. By that deed Mrs. Ophelia Manuel and Mrs. Eva Miller conveyed, in consideration of the payment of $28.60, merely their undivided interest in the W½ of the SE¼ of Section 22, declaring that this *interest* was " * * * the interest inherited by us from our deceased mother, Olive Ortego, wife of Joachim Fontenot, now both deceased".

■ We find it difficult to regard a conveyance of an undivided interest to be translative of the entire property. But even should we concede, in due deference to the views of our predecessors (see Read v. Hewitt, 120 La. 288, 45 So. 143 and cases cited in footnote No. 3 infra), that such a transfer satisfies the codal requirement of "just title" upon which the 10-year prescription must be founded, plaintiffs' plea cannot be sustained as it is evident that Bel Lumber Company did not purchase in good faith, that is, in the belief that its vendors were the owners of the entire property and were conveying it the whole. This clearly appears from the fact that Bel Lumber Company had already previously purportedly acquired one-half of 11/14ths interest in the property under the 1910 deed introduced in evidence by the defendants.

Counsel for plaintiffs contend that, since the 1913 deed is to be regarded under our jurisprudence as sufficient to support the acquisitive prescription of 10 years, plaintiffs' plea is well founded in law and Bel Lumber Company is to be deemed a purchaser in good faith inasmuch as good faith is always presumed in matters of prescription (Article 3481 of the Civil Code).

We find little force in this postulation. In the first place, the presumption of good faith has been fully rebutted in this case by the admission in evidence of the 1910 deed exhibiting that Bel Lumber Company knew that Mrs. Manuel and Mrs. Miller were not transferring the entire property.

■ Furthermore, while a conveyance of the vendor's right, title and interest in land, or a quitclaim deed, has been deemed sufficiently translative of the property to satisfy the requirement of a just title as defined and explained by Articles 3483, 3484, 3485 and 3486 of the Civil Code,[3] such a conveyance will be considered adequate to support a prescriptive title only where there is nothing contained in the deed itself which would create doubt in the mind of the vendee that the vendor's interest did not extend to the whole property.

As above pointed out, the 1913 deed shows on its face that the vendors were conveying only their undivided interest inherited from their mother (not that they inherited the property) and this was ample to place a reasonable person on notice that the interest being transferred did not include the entire property. See Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369. Thus, the deed itself places Bel Lumber Company in legal bad faith. We conclude that the trial judge correctly deduced that the result here is controlled by the rulings of Liles v. Pitts,

3. See Read v. Hewitt, 120 La. 288, 45 So. 143; Perkins v. Wisner, 171 La. 898, 132 So. 493; Screen v. Trainor, 172 La. 51, 133 So. 359; Cherami v. Cantrelle, 174 La. 995, 142 So. 150; Smith v. Southern Kraft Corp., 202 La. 1019, 13 So.2d 335 and Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So. 2d 225.

145 La. 650, 82 So. 735; Victoria Lumber Company v. Dawson, 159 La. 848, 106 So. 327 and Juneau v. Laborde, 219 La. 921, 54 So.2d 325.

It is also manifest that the 1910 deed did not purport to translate the entire property, for therein John R. Liles conveyed his undivided one-half interest of an 11/14ths interest in the NW¼ of the SE¼ of Section 22, which he held in indivision with Bel Lumber Company. Accordingly, Bel Lumber Company purportedly obtained by this conveyance a total undivided 11/14ths interest in the 40-acre tract. But here again there is no showing as to Bel's title to the one-half of the undivided 11/14ths interest it was supposed to own.

We find it difficult to follow the theory of plaintiffs' counsel as to the prescriptive title obtained by Bel Lumber Company under the 1910 deed. It seems to be founded on the idea that, since the 10-year acquisitive prescription need not be based on a single deed, Bel Lumber Company was in good faith because it is to be presumed that it believed that it owned an undivided one-half of an undivided 11/14ths interest in the land and that, when the 1910 deed is considered in connection with the 1913 deed, the presumption is that Bel's officers thought it was·owner of the whole property when possession was commenced in 1914 or 1915.

■ The short answer to this proposition is that no presumption of a belief will supply the want of a title on which the 10-year prescription must necessarily be based. And this, even though it would be generously assumed that it is possible to have a prescriptive title based on more than one deed of acquisition, passed at different times, for separate undivided interests. Compare, Land Development Co. of Louisiana v. Schulz, 169 La. 1, 124 So. 125, where the defendant, whose plea of prescription was sustained, purchased under a title translative of the entire property and, four days later, acquired a 1/200ths interest from a tax purchaser.

■ The other deed obtained by Bel Lumber Co. from Alidia Fontenot in 1917, covering her undivided interest in the W½ of the SE¼ has no bearing whatever on the case. It had relevance only to defendants' claim that Bel Lumber Company was in bad faith in 1913. Legally, it could not affect the plea of acquisitive prescription because, if the alleged possession of Bel Lumber Company had been commenced in good faith, its subsequent bad faith would not have prevented the accrual of prescription. See Article 3482 of the Civil Code.

Since we agree with the trial judge that Bel Lumber Company was in legal bad faith, it is unnecessary that we consider the question of its alleged possession of the land.

The judgment appealed from is affirmed.