442 So.2d 1280 (1983)
Leah Maxine LACOUR, Administratrix, Plaintiff-Appellant,
v.
Joseph E. SANDERS, Defendant-Appellee.
No. 83-282.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1983.
Writ Denied March 16, 1984.
*1281 William E. Skye, Alexandria, for plaintiff-appellant.
Trimble, Randow, Percy, Wilson & Foote, H. Gregory Walker, Alexandria, for defendant-appellee.
Before CUTRER, DOUCET and LABORDE, JJ.
CUTRER, Judge.
This is a suit for partition by licitation of approximately thirty acres of land located near Woodworth, Rapides Parish, Louisiana. Leah Maxine Jett Lacour, in her capacity as administratrix of the succession of her mother, Mary Ellen Scott Jett, sued Joseph E. Sanders claiming a one-half interest in a tract of land Sanders purchased from Ms. Lacour's father, Robert Jett, Jr. Sanders answered the suit pleading the affirmative defense of ten year acquisitive prescription. The trial judge rendered judgment recognizing Sanders as the owner of the disputed tract of land. Ms. Lacour appeals. We affirm.
The trial judge has favored us with excellent reasons for judgment and we will take the liberty of quoting from his statement of the facts and his discussion of the issues.
"Robert Jett, Jr. and Mary Ellen Scott were married in Grant Parish on September 1, 1932 .... The property in dispute was acquired by Robert Jett, Jr. while married and living with Mary Ellen Scott by act of sale dated May 25, 1937 .... About the time of the deed, Robert Jett, Jr. and Mary Ellen Scott Jett moved on this property and farmed it with their children and Ellen's children by her first marriage. In 1947 the Jett family moved about a mile away to a twenty-acre tract which Jett had purchased. The Jetts continued to farm the property, the subject of this lawsuit, until the death of Mary Ellen Scott on December 14, 1959 .... Joe Sanders, the purchaser and possessor, testified that three or four years before Ellen Scott Jett died no one lived on the property.... Joe Sanders, his family, and the Jett family were friends for many years in a small community. The families attended the same church. The Jett children and the Sanders children played together and went to school together. Joe Sanders and his wife knew Mary Ellen Scott Jett died on December 14, 1959. Both attended the wake.
"Shortly after the funeral, Robert Jett, Jr. married Willie Mae Williams. On July 9, 1960, Robert Jett, Jr. alone sold the property, subject of this lawsuit, to defendant, Joe Sanders.

*1282 "Shortly thereafter the Sanders family occupied a frame house, which they moved onto the property, and lived there until 1976, when they constructed on the property the brick veneer house in which they presently reside .... Mr. Sanders further testified that he executed two mineral leases on the property. He executed a ten-year lease in 1970 and a five-year lease in 1982.... Mr. Sanders testified that from the date of purchase until the date of this trial he believed he was indeed the owner of the full 30.30 acres which he possessed as owner.

"To plaintiff's claim to be recognized as co-owners of an undivided one-half interest in the property, defendant has answered alleging ten years acquisitive prescription; estoppel, and ownership of his home. Defendant third partied his vendor, Robert Jett, Jr., who answered and third partied Ellen Scott's forced heirs, which issues were deferred for later hearing." (Reference to trial exhibits omitted.)

ISSUES
The determinative issue in this appeal is whether the trial judge's ruling, that Sanders had proven ownership of the property by prescription, is correct. Ms. Lacour also raised questions concerning equitable estoppel and the appropriateness of partition by licitation. Because of our resolution of the prescription issue it is not necessary that we discuss these other questions.

ACQUISITIVE PRESCRIPTION
Civil Code art. 3458, as it read at the time this suit was filed, defined acquisitive prescription as follows:
"The prescription by which the ownership of property is acquired, is a right by which a mere possessor acquires the ownership of a thing which he possesses by the continuance of his possession during the time fixed by law."
An immovable, such as the tract of land at issue in this case, can be acquired in full ownership, by the operation of acquisitive prescription, in ten years, if four criteria are met. These criteria are set out in Civil Code art. 3479. They are: (1) Good faith on the part of the possessor; (2) A title which shall be legal, and sufficient to transfer the property; (3) Possession during the time required by law; and (4) An object which may be acquired by prescription.[1]
The trial judge, after enumerating the prerequisites of art. 3479, stated:
"This Court finds that Joe Sanders proved without contradiction that he exercised continuous and uninterrupted, peaceable, public, and unequivocal possession as owner for more than ten years and with a legal title sufficient to transfer the property. Melancon v. Wood, 357 So.2d 75 (4th Cir., 1978), [writ denied, 359 So.2d 201 (La.1978)], C.C. 3479, 3483, 3487, (C.C. 3475, 3476, 3483 as amended by Act No. 187 of 1982.)

"The final element to be determined for ten-year acquisitive prescription and the only element disputed by plaintiff is good faith on the part of Sanders.

"Civil Code Article 3451 provides:

"The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another."
"Civil Code Article 3481 provides:

`Good faith is always presumed in matters of prescription; and he who *1283 alleges bad faith in the possessor, must prove it.'

"The Court in Melancon, supra, at page 77, held that to be in good faith, `..., a possessor must have legitimately and reasonably believed that the person from whom he acquired title was the true owner of the property.'

* * * * * *
"Both Robert Jett, Jr. and Joe Sanders are uneducated ... men who lived in the rural community of Woodworth. Sanders was ignorant of Louisiana community property laws .... The property in dispute is located in the Ashton [Community]. Furthermore, at the time of the sale Article 2404 of the Civil Code, the Head and Master rule, was in effect whereby the husband could transfer full interest in the community by onerous title without the permission of his wife.

"Plaintiff's position is that defendant is in bad faith because he knew of the death of Ellen Scott Jett. Plaintiff's contention is based upon Juneau vs. Laborde [219 La. 921], 54 So.2d 325 (1951) and Thibodeaux v. Quebodeaux, 282 So.2d 845 (3rd Cir., 1973). These cases are inapposite. It is clear that in these cases the vendee had knowledge of title defects.

"In Juneau, the vendee was warned against buying the property and told that the title was not good. In Thibodeaux, the vendee lived near the vendor. He was aware that the vendor acquired the property while married and sold it after the vendor's wife died. Equally, in Thibodeaux, supra, at page 850, the vendee was aware of the Louisiana community property laws and knew that `... when a man and a woman are married and they acquire property half is for the man and half is for the woman. [This emphasis ours.] The Courts in the Juneau and Thibodeaux cases found the vendee's knowledge tantamount to an error in law which previously barred 10-year acquisitive prescription. This Court notes in passing that under the new law, Article 3481, neither error of law, nor error of fact defeats the right to acquire by ten-year acquisitive prescription.

"In this case, Sanders testified that several years prior to the sale, while Ellen Scott Jett was alive, he asked Robert Jett, Jr. to sell the property and Jett said no. Sanders testified he told Jett if he changed his mind to let him know. Sanders testified that in 1960, Jett came to him and said he wanted to sell.

"Joe Sanders' wife, Ola Marie Sanders, testified that Jett stated all of the children were willing to sell .... In her deposition at page 7 she was asked:

Q. `You thought that Robert Jett, Jr. could sell all the property in spite of the fact that his wife had died?'

A. `Well, I didn't think in those terms that way, but I thought after we had wanted to buy the property and he had come to us and say the children all had agreed and they wanted to sell the property and knowed we were looking for land, so, and after that, well, I ...'
Reading her entire deposition makes it clear that even Ola Marie thought Robert Jett could convey all of the property. Celestine Cole and Leah Maxine Jett LaCour, daughters of Robert Jett, Jr., testified that before the sale they told their father that they did not want to sell the property. It is clear that neither Jett nor his daughters conveyed this information to the Sanders. Additionally, after both Celestine and Leah received from their father $200.00 each as their portion of the proceeds from the sale, they still did not tell the Sanders of their opposition to the sale until this suit was filed twenty-two years later.
"Under Melancon v. Wood, 357 So.2d 75 (4th Cir., 1978) ... [Writ ref'd, 359 So.2d 201 (La.1978)], legal bad faith of the seller is not a relevant determination as to the issue of good faith by the purchaser. Additionally, the knowledge of the seller's lack of right or interest *1284 in the property is not imputed to the buyer, and the buyer's error in buying from the seller is an error of fact. The record is silent as to any information conveyed to Sanders which would place him on notice to inquire about his title. He remained a good faith possessor.

"A title examination would not reveal that Mary Ellen Scott Jett was deceased, thus the preparation of the act of sale by [the] attorneys [involved in the sale] would have been made in accordance with the facts set forth in the public records.[[2]] Sanders testified he did not study and read the documents and that the lawyers prepared the deed and kept everything straight.

"It is abundantly clear that defendant Joe Sanders was a good faith possessor of the entire 30.30 acres in dispute and entitled to acquire full ownership under the acquisitive prescription of ten years and this Court so holds."
A careful review of the record before us and a thorough study of the jurisprudence of acquisitive prescription convinces us that the trial court's determination was correct. We find no error in the trial judge's actual findings or in his application of the law to those facts. The trial court judgment shall be affirmed.
For the reasons assigned, the judgment of the trial court is affirmed. Plaintiff-appellant, Leah Maxine Lacour, is assessed with the costs of this appeal.
AFFIRMED.
NOTES
[1] Generally, immovables are susceptible to prescription. In certain specified situations ownership of land cannot be acquired by prescription. For the most part these situations involve lands owned by the state. Though not specifically addressed by the trial judge or either parties' counsel, it is clear from the record that the land in dispute is susceptible to acquisition by prescription.
[2] We note this is true because Mary Ellen Scott Jett's succession was not opened, and plaintiff was not appointed Administratrix until 1982, shortly prior to this suit.